# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **STEPHANIE B. DEMERS,** | ) | Case No. 2:23-cv-00940 |
| | ) | |
| Plaintiff, | ) | Judge _____ |
| | ) | |
| v. | ) | |
| | ) | |
| **OHIO CIVIL RIGHTS COMMISSION,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ANGELA PHELPS-WHITE, Personally and in Her Official Capacity as Executive Director of the Ohio Civil Rights Commission,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **LORI BARRERAS, Personally and in Her Official Capacity as Chair of the Ohio Civil Rights Commission,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **WILLIAM PATMON, III, Personally and in His Official Capacity as Commissioner of the Ohio Civil Rights Commission,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **MADHU SINGH, in Her Official Capacity as Commissioner of the Ohio Civil Rights Commission,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JULIA McNEIL DANISH, in Her Official Capacity as Commissioner of the Ohio Civil Rights Commission,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CHARLIE WINBURN, in His Official Capacity as Commissioner of the Ohio Civil Rights Commission,** | ) | **COMPLAINT WITH JURY DEMAND** |
| | ) | |
| Defendants. | ) | |

**I.     INTRODUCTION**

1.     This is an action for compensatory and punitive damages and injunctive relief arising from a series of acts of sex and age discrimination and retaliation by the Defendants, the Ohio Civil Rights Commission, its Executive Director, Angela Phelps-White, its Chair, Lori Barreras, and Commissioners William Patmon III, Madhu Singh, Julia McNeil Danish, and Charlie Winburn, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, as amended, the First and Fourteenth Amendments to the United States Constitution, and 42 United States Code Section 1983.

Defendant Phelps-White, from the time of her appointment as the Commission's Executive Director in March 2020 until the Plaintiff's termination in March 2021, subjected the Plaintiff, Stephanie B. Demers, the Commission's former chief legal counsel, as well as other older female employees in leadership positions with the Commission, to a discriminatory hostile working environment, which included interfering with their work, denigrating their performance, removing key responsibilities, and forcing them to conduct menial tasks in place of their previously assigned duties.  Defendant Phelps-White did this openly and blatantly, informing Ms. Demers that she did not work well with women and justifying her actions with transparently false claims.  Defendant Phelps-White subsequently learned that Ms. Demers had begun to complain within the Commission, including to Defendant Barreras and other individual commissioners and managers, about the way she was targeting female staff, and especially older female staff.  On March 12, 2021, Defendant Phelps-White abruptly terminated Ms. Demers's employment with no notice or explanation and replaced Ms. Demers, a highly regarded attorney with decades of legal experience, with a younger, less qualified male employee.

II. **JURISDICTION AND VENUE**

2. This Court has federal question jurisdiction over the Plaintiffs' claims pursuant to Title 28 U.S.C. Section 1331, this being an action pursuant to 42 U.S.C. Sections 1983 and 2000e, 29 U.S.C. Section 621, and the United States Constitution.

3. At all relevant times, the parties resided and conducted business, and the events herein took place, in Franklin County, within the Southern District of Ohio, Eastern Division.

III. **PARTIES**

4. Plaintiff Stephanie B. Demers, is a 57-year-old female resident of Franklin County, Ohio, within the jurisdiction of the Southern District of Ohio, Eastern Division.

5. Defendant Ohio Civil Rights Commission ("the Commission") is an instrumentality of the State of Ohio. It is an employer for purposes of Title VII of the Civil Rights Act of 1964, as amended, with approximately 75 employees. Its stated purpose is to prevent, investigate, and remedy discrimination and retaliation in employment, public accommodations, credit, and housing throughout Ohio.

6. Defendant Angela Phelps-White is the Commission's executive director, its chief executive staff member, who has responsibility for directly supervising the Commission's executive staff and indirectly supervising the remainder of its entire staff, as well as approving the Commission's internal procedures, and training, and recommending and advising the commissioners on matters of policy and individual cases before the Commission. Defendant Phelps-White is a resident of Franklin County, Ohio, within the jurisdiction of the Southern District of Ohio, Eastern Division. She is sued in her personal and official capacities.

7. Defendant Lori Barreras is, and at all relevant times, has been a member of the Commission and its chair. Defendant Barreras is one of five state-appointed commissioners

3

responsible for deciding cases before the Commission and establishing Commission policy in all respects. As chair of the Commission, Defendant Barreras is also the primary point of contact and supervision for Defendant Phelps-White, and serves functionally as Defendant Phelps-White's direct supervisor. Defendant Barreras is a resident of Franklin County, Ohio, within the jurisdiction of the Southern District of Ohio, Eastern Division. She is sued in her personal and official capacities.

8. Defendant William Patmon, III, is, and at all relevant times, has been a member of the Commission. Defendant Patmon is one of five state-appointed commissioners responsible for deciding cases before the Commission and establishing Commission policy in all respects. In his capacity as a commissioner, and particularly as the Commission's current longest-serving member, Defendant Patmon shares responsibility with Defendant Barreras in supervising the activities of Defendant Phelps-White. Defendant Patmon is a resident of Franklin County, Ohio, within the jurisdiction of the Southern District of Ohio, Eastern Division. He is sued in his personal and official capacities.

9. Defendants Madhu Singh, Julia McNeil Danish, and Charlie Winburn are three of the five current members of the Commission. They are three of the five state-appointed commissioners responsible for deciding cases before the Commission and establishing Commission policy in all respects. They are all residents of Ohio. They are sued in their official capacities.

10. The actions of the Defendants and their agents and employees, which were within the scope of their employment, were at all relevant times undertaken, in concert with each other, because of intentional discrimination and retaliation and conducted with malice and knowing disregard for the Plaintiff's rights under clearly established federal law.

IV.     **FACTS**

11.     Plaintiff Stephanie B. Demers, an Ohio attorney, began working at the Ohio Civil Rights Commission in January 2014, when she was hired as its chief legal counsel, with principal responsibility as the Commission's general in-house counsel.

12.     Prior to joining the Commission's staff, Ms. Demers had represented the Commission through the Ohio Attorney General's Office for ten years, when she served as chief of that office's Civil Rights Division.  Ms. Demers had come to the Attorney General's Office with substantial experience at a private law firm.

13.     In her role as chief legal counsel for the Commission, Ms. Demers advised the Commission's five commissioners, its executive director, and its central and regional office staff, on all legal matters, regulatory amendments, and policy decisions, and served on the Commission's executive staff, which met regularly to advise the executive director and participate in high-level decision-making.

14.     Ms. Demers also served as a supervisor for the Commission, directly overseeing the activities of the Commission's administrative law judge, its compliance director, and its human resources manager.

15.     Ms. Demers's work, both in her time as chief of the Civil Rights Division of the Attorney General's Office and as chief legal counsel, was well-regarded by the Commission, and she was considered a trusted adviser to the individual commissioners and the Commission's long-time executive director, G. Michael Payton.

16.     In recognition of her lengthy service, reliability, effectiveness, and rapport with the staff, when Mr. Payton retired at the end of 2019, Ms. Demers was named interim executive director, and multiple individual commissioners encouraged her to apply for the permanent

role—an invitation she declined, as she believed she it would be preferable to return to a legal advisory role.

17. In March 2020, the Commission appointed Defendant Angela Phelps-White as its new executive director.

18. By mid-March 2020, the global coronavirus pandemic had begun, and there were only a few days between the arrival of Defendant Phelps-White at the Commission and the decision by Ohio's governor to shut down the Commission's physical office and shift all of its staff to work-from-home status.

19. During that brief period, Defendant Phelps-White began meeting individually with several high-level staff members, including Ms. Demers. In their meeting, the first time the two of them had met face to face, Defendant Phelps-White directly told Ms. Demers, "I have a difficult time working with women." In this and subsequent similar discussions, Defendant Phelps-White complained about and disparaged a number of high-level female employees they interacted with, as well as high-level female employees Defendant Phelps-White had worked with in her prior role at Ohio's State Employee Relations Board, including her female executive director and a group of three female subordinates, who she told Ms. Demers could not get along.

20. Ms. Demers was shocked by Defendant Phelps-White's open expression of discriminatory bias against women, but did not respond, given that this was her first interaction with her new supervisor.

21. Defendant Phelps-White soon began taking actions consistent with her expressed distaste for working with women.

22. Within several weeks of taking over the position of Executive Director, Defendant Phelps-White began reducing Ms. Demers's responsibilities and status within the Commission.

6

23. In particular, over the course of several months, Defendant Phelps-White challenged and then eliminated Ms. Demers's supervisory authority over two key subordinates, the older female head of Human Resources, Judia Brown, and the younger male head of the Compliance Department, Desmon Martin. Defendant Phelps-White provided no explanation for these actions, and even insisted, falsely, that Ms. Demers was not actually supposed to be supervising the Human Resources office. When Ms. Demers disagreed, Defendant Phelps-White accused her of lying.

24. The effect of removing Ms. Brown from Ms. Demers's supervision, in combination with other steps Defendant Phelps-White took to exclude Ms. Demers from any role in hiring, disciplinary, and investigative matters within the Commission, was to remove from the scope of Ms. Demers's duties her former responsibility for ensuring the Commission complied with Ohio and federal anti-discrimination laws.

25. Besides ultimately removing Ms. Brown and Mr. Martin from Ms. Demers's supervision, Defendant Phelps-White took very different approaches to their management.

26. Over the course of 2020, Defendant Phelps-White engaged in a campaign of hostility toward Ms. Brown, ultimately demoting her without any legitimate reason. When Ms. Demers sought an explanation for Ms. Brown's demotion, Defendant Phelps-White claimed there had been a series of complaints against Ms. Brown. No such complaints actually existed. Ms. Brown chose to resign instead of accepting a demotion, and she was immediately replaced with a much younger male Human Resources Director from outside the Commission.

27. Meanwhile, Defendant Phelps-White elevated the role of Compliance Director Martin and made him a part of the executive staff. Without any explanation or justification, she prevented Ms. Demers from functioning as part of the executive staff. Ms. Demers had always

7

previously been a full participant in the Commission's executive staff in her role as chief legal counsel, participating in and providing guidance to the Executive Director on major policy decisions and key cases.  Defendant Phelps-White did not announce or explain the change; she simply began meeting with and informally consulting the other members of the executive staff without inviting Ms. Demers to participate or informing her of new developments.

28. Defendant Phelps-White also began to isolate Ms. Demers from communications with others within and outside the Commission.

29. Defendant Phelps-White began prohibiting employees from contacting Ms. Demers to seek her legal advice, when she had always previously served as an important resource for employees at all levels who frequently required legal opinions on major and minor issues affecting cases.

30. Defendant Phelps-White also demanded that Ms. Demers cease communications with other government agencies in her role as legal counsel.  For instance, Ms. Demers would be consulted by the governor's office on key issues affecting civil rights.  When Defendant Phelps-White learned that Ms. Demers had been in contact with the governor's office, she yelled at her and forbade her from ever speaking to the governor's office again.

31. Defendant Phelps-White also shifted Ms. Demers's responsibilities from high-level policy and case-related legal guidance to more time-consuming, less advanced tasks.

32. For instance, the Commission had, for years, relied on extensive, cost-free staffing support from the Ohio Attorney General's Office to perform the voluminous, time-consuming task of drafting administrative complaints for cases moving forward to the administrative hearing process.  The Civil Rights Section of the Attorney General's Office had multiple lawyers accustomed to preparing these filings, and these attorneys are the ones who

must carry these filings forward through discovery, motions practice, and all of the remaining steps of the administrative hearing process, including decisions to amend or drop complaints as the hearing process warrants.  In addition, the Civil Rights Section had substantial support staff who traditionally assisted with the mechanics of drafting and filing the complaints.  But in 2020, without any legitimate explanation or justification, Defendant Phelps-White began requiring Ms. Demers, who was the Commission's only practicing in-house attorney, and had no paralegals or legal secretaries assisting her, to draft the complaints personally. This change served no legitimate purpose for the Commission, was not in the Commission's legitimate interest, and was intended only to overburden Ms. Demers.

33. Similarly, Defendant Phelps-White began insisting, with no explanation or legitimate justification, that Ms. Demers personally manage the preparation and service of all of the Commission's subpoenas, which had also previously been done by the Attorney General's Office and its extensive legal and support staff.

34. In addition to burdening Ms. Demers with low-level legal work that had been performed without cost by the Attorney General's Office, Defendant Phelps-White also began assigning Ms. Demers menial clerical work far below her training and competence, such as collecting the central office mail and distributing it to its recipients.

35. These clerical duties were thrust upon Ms. Demers in place of more senior-level work that influenced the direction of the Commission.

36. At Defendant Phelps-White's insistence, Ms. Demers was removed from her previous role advising in the interviewing and hiring process for management-level staff, which she had always previously participated in.  In her place, Mr. Martin, the younger male Compliance Director, began assisting with hirings.

37. Defendant Phelps-White also stripped Ms. Demers of other human resources and internal compliance-related duties, including depriving her of opportunities to advise Defendant Phelps-White and the other executive staff of the Commission on matters with legal implications.

38. Defendant Phelps-White also prohibited Ms. Demers from making her previously regular reports to the five commissioners at Commission meetings, cutting her off from direct contact with the Commissioners except through Defendant Phelps-White.

39. Defendant Phelps-White engaged in a similar pattern of conduct toward other female managers, especially older females.  For instance, in addition to her previously referenced demotion of Ms. Brown, Defendant Phelps-White instructed that a female regional director for the Commission's Dayton Regional Office be documented and set up for termination for supposed performance issues, while disregarding repeated complaints of performance deficiencies, serious policy violations, and alleged discriminatory acts by a similarly situated male regional director.  Defendant Phelps-White also shielded a senior-level male manager from any consequences for a pattern of performance deficiencies and complaints from his subordinates of mismanagement and mistreatment.

40. The Dayton director, like Ms. Brown, resigned in response to Defendant Phelps-White's attacks on her.  Meanwhile, both low-performing male managers remain employed with the Commission as of this filing.

41. Defendant Phelps-White also engaged in a campaign of isolation and attacks on other senior female managers with the Commission.  In contrast to her treatment of equal employment opportunity complaints against male managers, whom she uniformly shielded and defended, Defendant Phelps-White attempted to use a less compelling complaint of discrimination against a female regional director to impose discipline.  And Defendant Phelps-

10

White repeatedly sought to circumvent the leadership of the older female Director of Operations by seeking advice directly from that director's male subordinates while ignoring the director.

42. In response to this pattern of attacks against her and other female staff, especially older female managers, Ms. Demers, who no longer had any duties related to enforcing equal employment opportunity laws, began engaging in protected activity by raising her concerns of discrimination against herself and others.

43. Ms. Demers repeatedly raised her concerns regarding a pattern of discrimination affecting her and other older women to the Commission's Director of Operations, to Chair Barreras, to other individual commissioners, and to others within the Commission, making it clear she believed Defendant Phelps-White was targeting her because she was female and that Phelps-White had discriminated against Ms. Brown and other older female managers.

44. Ms. Demers's complaints ultimately proved futile.  The Commissioners she spoke to encouraged her to stay with the Commission instead of seeking other work, but they did not actually initiate any investigation of her concerns or direct Defendant Phelps-White to change her behavior in any way.

45. Finally, Ms. Demers was abruptly summoned to a meeting with Defendant Phelps-White on March 12, 2021, with no explanation of the topic of the meeting.  At the meeting, which also included the new, younger male Human Resources director, Defendant Phelps-White terminated Ms. Demers, stating only that she was taking the legal department of the Commission in a "different direction."

46. Defendant Phelps-White's claim that she had a "different direction" for Ms. Demers's department was blatantly pretextual.  She had never asked Ms. Demers to do anything

11

that Ms. Demers did not immediately do, and had she expressed a desire to do anything else differently, Ms. Demers had not given any indication that she would refuse.

47. Director Phelps-White had no one lined up to fill Ms. Demers's position permanently and take it in a "different direction," and made no effort to set up a reasonable transition to someone who would be prepared to take a different approach. Instead, Ms. Demers's duties were assigned on an interim basis to a younger, far less experienced male Commission employee. Unlike Ms. Demers, Defendant Phelps-White permitted this male employee to communicate freely with the Commission staff and perform the functions of a general counsel.

48. Nearly a year later, Ms. Demers's younger male replacement was moved aside in favor of a newly hired, substantially younger female attorney. This occurred only after multiple unsuccessful attempts by Defendant Phelps-White to identify and hire a male candidate for the position, and long after Ms. Demers had openly and formally raised concerns of sex discrimination, including through a charge with the U.S. Equal Employment Opportunity Commission. The female attorney hired as general counsel left the Commission after less than a year and has since been replaced by another male attorney.

49. None of the attorneys in the string of replacements for Ms. Demers had anything resembling her track record of civil rights and administrative legal experience, and none of them have pursued a noticeably "different direction" for the office, as Defendant Phelps-White claimed to have wanted when she terminated Ms. Demers.

50. Despite Ms. Demers's complaints about her mistreatment and the mistreatment of other older female staff, neither Chair Barreras nor anyone else within the Commission has initiated any formal investigation to address these concerns, nor have they taken any remedial

action to prevent further mistreatment of the Commission's staff. The result, under Defendant Phelps-White's leadership, and with the tacit and express support of Chair Barreras and the commissioners, has been a continuing pattern, amounting to a custom and practice, of hostility toward female and older workers within the Commission and a total lack of accountability for male and younger managers, resulting in a mass exodus of long-serving, qualified Commission employees who have dedicated their careers to the prevention and remediation of discrimination.

51. The actions of the Defendants described herein were undertaken with malice and knowing and reckless disregard for Ms. Demers's statutory and constitutional rights.

52. The actions of the Defendants have caused Ms. Demers loss of income, reputational damages, anxiety, anger, humiliation, embarrassment, and stress.

53. Ms. Demers has taken all actions she is required to take to exhaust her administrative remedies for purposes of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967, as amended.

54. Ms. Demers filed a timely charge with the U.S. Equal Employment Opportunity Commission on November 9, 2021, alleging the sex discrimination and retaliation described above. A notice of right to sue has been requested, but not yet received, from the U.S. Department of Justice, and will be included in this action upon receipt.

V. **FEDERAL CLAIMS FOR RELIEF**

    A. **DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII**

55. The preceding paragraphs are hereby incorporated and re-alleged.

56. The sex discrimination against the Plaintiff by Defendant Ohio Civil Rights Commission, as well as its retaliation against the Plaintiff for her opposition to discrimination

and her participation in investigations related to discrimination, violated Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Section 2000e *et seq.*).

      **B.**     **DISCRIMINATION AND RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

57.    The preceding paragraphs are hereby incorporated and re-alleged.

58.    The age discrimination against the Plaintiff by Defendants Phelps-White, Barreras, Patmon, Singh, McNeil Danish, and Winburn, in their official capacities, as well as its retaliation against the Plaintiff for her opposition to discrimination and her participation in investigations related to discrimination, violated the Age Discrimination in Employment Act, as amended (29 U.S.C. Section 621 *et seq.*).

59.    This claim under the Age Discrimination in Employment Act is brought pursuant to the *ex parte Young* doctrine for injunctive and ancillary relief against individual state officers in their official capacities.  As such, it is outside the scope of immunity afforded to the State of Ohio by the Eleventh Amendment to the U.S. Constitution.

      **C.**     **DISCRIMINATION AND RETALIATION IN VIOLATION OF THE UNITED STATES CONSTITUTION**

60.    The preceding paragraphs are hereby incorporated and re-alleged.

61.    By discriminating against the Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and by discriminating and retaliating against the Plaintiff in response to her speech on a matter of great public concern and for raising equal protection concerns, the actions of Defendants Phelps-White, Barreras, and Patmon, in their personal and official capacities, and Defendants Singh, Danish, and Winburn, in their official capacities, have violated the First and Fourteenth Amendments to the United States Constitution, which are actionable pursuant to Title 42 U.S.C. Section 1983.

## VI. PRAYER FOR RELIEF

62. **Wherefore,** the Plaintiff asks for judgment against the Defendants and requests:

(A) Compensatory and punitive damages in an amount to be determined at trial;

(B) An order reinstating the Plaintiff to her former employment with the Ohio Civil Rights Commission, directing that she be paid commensurate with her experience and responsibilities, and compelling the Commission and the individual Commissioners, in their official capacities, to refrain from further acts of discrimination and retaliation in violation of federal law;

(C) Declaratory relief in the form of a declaration that the Defendants violated the Plaintiff's federal constitutional and statutory rights by discriminating and retaliating against her;

(D) The costs of this action, including reasonable attorney's fees;

(E) Pre- and post-judgment interest and compensation for the tax consequences of the delayed payment of the Plaintiff's compensation; and

(F) Any other relief deemed appropriate by the Court.

    Respectfully Submitted,

/s/Frederick M. Gittes
Frederick M. Gittes (0031444)
fgittes@gitteslaw.com
Jeffrey P. Vardaro (0081819)
jvardaro@gitteslaw.com
The Gittes Law Group
723 Oak St.
Columbus, OH 43205
(614) 222-4735
Fax: (614) 221-9655
Attorneys for the Plaintiff

## JURY DEMAND

The Plaintiffs hereby demand a jury of eight (8) to determine all issues triable by jury in this matter.

/s/Frederick M. Gittes
Frederick M. Gittes (0031444)