UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STEPHANIE B. DEMERS,**

        **Plaintiff,**        :

  v.                            **Case No. 2:23-cv-940**
                              **Judge Sarah D. Morrison**
                              **Magistrate Judge Kimberly A.**
**OHIO CIVIL RIGHTS**                **Jolson**
**COMMISSION,** *et al.***,**        :

        **Defendants.**

## OPINION AND ORDER

Defendants filed a Partial Motion to Dismiss the Second Amended Complaint (ECF No. 25), to which Plaintiff Stephanie Demers responded (ECF No. 26) and Defendants replied (ECF No. 27). Demers then moved for leave to file a sur-reply (ECF No. 28), and Defendants responded in opposition (ECF No. 29).

For the reasons that follow, both Motions are **GRANTED in part** and **DENIED in part**.

### I.    MOTION FOR LEAVE TO FILE SUR-REPLY

Demers argues that a sur-reply is necessary to respond to legal and factual arguments raised for the first time in Defendants' reply and to clarify that she has not brought a mixed-motive Equal Protection claim. (ECF No. 28.)

The Court has discretion to deny leave to file a sur-reply where the opposing party's reply did not raise new legal arguments or introduce new evidence. *Modesty v. Shockley*, 434 Fed. Appx. 469, 472 (6th Cir. 2011) (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481–82 (6th Cir. 2003)). Defendants' reply brief did not raise

new legal or factual arguments, it expounded on arguments raised in the Motion to Dismiss and provided counterpoints to arguments raised in Demers's response. This is the purpose of a reply brief and is no reason for filing a sur-reply.

As for her second reason for filing a sur-reply, Demers referenced both sex and age discrimination when discussing her Equal Protection claim in her response to Defendants' Motion to Dismiss. (ECF No. 26, PAGEID # 236.) Defendants seemingly took this to mean that her claim is partially based on age discrimination and made responsive arguments in their reply. (*See* ECF No. 27, PAGEID # 249–51.) Demers seeks to clarify that her Equal Protection claim is not based on age discrimination. (ECF No. 28, PAGEID # 261.) Demers's request to abandon a mixed-motive Equal Protection claim via sur-reply is well taken.

Accordingly, Demers's Motion for Leave to File Sur-reply is **GRANTED** for the limited purpose of abandoning any Equal Protection claim based on age discrimination and **DENIED** in all other respects.

## II. PARTIAL MOTION TO DISMISS

### A. Factual Background

The following draws from the factual allegations in the Second Amended Complaint. Demers's allegations are considered as true for purposes of the instant motion, but her legal assertions are not. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

In 2014, Demers was hired as the Chief Legal Counsel for Defendant Ohio Civil Rights Commission ("the OCRC" or "the Commission"[1]). (¶ 11.) She was 48 years old and came to the position with extensive legal experience in the private and public sector, including ten years of experience representing the OCRC through the Office of the Ohio Attorney General. (¶ 12.)

From the start, Demers's responsibilities included advising the OCRC's five Commissioners, its Executive Director (her supervisor), and its central and regional office staff on regulatory amendments, policy decisions, and all legal matters. (¶ 13.) She was treated as part of the Commission's executive staff, meeting regularly with the Executive Director and participating in high-level decisions. (¶ 13.) Additionally, Demers supervised the OCRC's administrative law judge and the heads of the human resources and compliance departments. (¶ 14.) Demers was a trusted advisor and her work was well-regarded by the Commission, so much so that she was selected as interim Executive Director when her supervisor retired. (¶¶ 15, 16.)

All of this began to change when Defendant Angela Phelps-White was appointed as the Commission's Executive Director in March 2020. (¶ 18.) In Demers's first meeting with her, Phelps-White told Demers that she had "a difficult time working with women" and made disparaging comments about women she worked with in the past. (¶ 19.) Within a few months, Phelps-White started reducing Demers's status and responsibilities. (¶ 22.) Demers was no longer treated

---

[1] The Commission is an instrumentality and legal arm of the State of Ohio.

3

as a member of the executive staff, Phelps-White excluded her from meetings and forbade her from advising OCRC employees and other government agencies. (¶¶ 27–30.) Phelps-White also stripped Demers of her supervisory authority over the heads of the human resources and compliance departments, effectively eliminating her involvement in employment decisions and her role in ensuring internal compliance with anti-discrimination laws. (¶¶ 23–24.)

While Demers's status and responsibilities were reduced, the responsibilities of a younger male employee (Desmon Martin) were expanded. (¶ 27.) Martin was the head of the compliance department and, although he had recently reported to Demers, Phelps-White positioned him as Demers's pseudo-replacement on the executive staff. (*Id.*) Phelps-White also had Martin assist with management-level hiring decisions, a duty previously performed by Demers. (¶ 36.) According to Demers, she was not the only woman whose duties were reallocated to younger male employees. (¶¶ 39–41.)

After observing this trend by Phelps-Whites, Demers began sharing her concerns about gender and age discrimination with others at the Commission, including one of the five active Commissioners, Defendant Lori Barreras. (¶ 43.) Commissioner William Patmon III was also aware of Demers's complaints. (¶ 52.) But neither Commissioner initiated an investigation, nor did they take remedial action against Phelps-White. (¶¶ 52–53.) Demers believes this inaction emboldened Phelps-White to retaliate against her for complaining. (¶¶ 54–55.)

4

On March 12, 2021, Phelps-White terminated Demers, stating that the legal department was going in a "different direction." (¶ 47.)

None of Demers's successors have taken the legal department in a noticeably different direction. (¶ 51.) Demers's interim replacement was a younger and less experienced male, and, unlike with Demers, Phelps-White permitted him to freely communicate with the OCRC staff and perform the normal functions of Chief Legal Counsel. (¶ 49.) Nearly a year after Demers's termination, a substantially younger and less experienced female attorney was hired as her permanent replacement; this attorney left the Commission after less than a year and was replaced by another male attorney. (¶ 50.)

Within six months of her termination, Demers filed a charge of retaliation and gender and age discrimination with the Equal Employment Opportunity Commission. (¶ 59.) She received her right to sue letter on March 14, 2023, and timely filed the instant suit against the Commission, Phelps-White, and the OCRC Commissioners that were acting during the last two-years of her employment (collectively "the Commissioners"[2] and together with Phelps-White "the Individual Defendants").

On Count I, Demers brings claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against the Commission. On Count II, she brings claims of age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") against the

---

[2] The Commissioners are Barreras, Patmon, Madhu Singh, Valerie Lemmie, and Charlie Winburn.

Individual Defendants in their official capacities. And on Count III, she brings a gender discrimination Equal Protection claim and a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against the Individual Defendants in their official capacities and against Phelps-White, Barreras, and Patmon in their individual capacities.

### B. Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### III. Analysis

Defendants seek dismissal of Demers's retaliation claims and her Section 1983 claim for several reasons. Defendants first argue that Demers's Title VII and ADEA retaliation claims must be dismissed because she has failed to plead certain elements of her prima facie case. For her First Amendment retaliation claim, Defendants argue that claim fails because Demers does not allege that she engaged in constitutionally protected speech. Next, Defendants argue that Demers's individual capacity Section 1983 claim must be dismissed because Phelps-White, Barreras, and Patmon are entitled to qualified immunity. And lastly, Defendants argue that Demers's official capacity Section 1983 claim should be dismissed as duplicative of her Title VII claim. The Court will address each argument in turn.

### A. Demers has sufficiently pleaded retaliation claims under Title VII and the ADEA.

To state a claim for retaliation under both Title VII and the ADEA, Demers must allege sufficient factual content to permit the court to reasonably infer that the Commission retaliated against her because she "opposed" sex and age discrimination. 28 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA); *Ford v. Wendy's of Bowling Green,* No. 3:21-cv-00310, 2021 WL 2952938, at *4 (M.D. Tenn. July 14, 2021) (articulating pleading standards for Title VII and ADEA retaliation claims).

7

To succeed on her Title VII and ADEA retaliation claims, Demers must eventually prove the following elements of her prima facie case: (1) that she engaged in activity protected by Title VII and the ADEA; (2) that Defendants knew that she exercised her protected rights; (3) that Defendants thereafter took an action that was materially adverse to her; and (4) that there was a causal link between the protected activity and the adverse action. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). Although Demers is not required to establish her prima facie case to survive Defendants' Motion to Dismiss, the prima facie elements are useful considerations when determining the plausibility of her retaliation claims. *See Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 844 (S.D. Ohio Nov. 30, 2020) (Cole, J.); *Jackson v. Crosset Co.*, 33 F. App'x 761, 762 (6th Cir. 2002) ("[T]he McDonnell Douglas framework is an evidentiary standard, not a pleading standard.").

Demers's factual allegations closely track the elements of a prima facie case and support an inference of retaliation. She alleges that she opposed sex and age discrimination by complaining about Phelps-White's unequal treatment of her and other older women at the Commission. She further alleges that, after learning about these complaints, Phelps-White terminated her without warning and for a demonstrably pretextual reason. This is sufficient to state an ADEA retaliation claim.

Accordingly, Defendants' Motion to Dismiss Demers's Title VII and ADEA retaliation claims on Counts I and II is **DENIED**.

### B. Demers has sufficiently pleaded a First Amendment retaliation claim.

There is a three-step inquiry to determine whether speech by a public employee is constitutionally protected. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017). A plaintiff must show that (1) she spoke as a private citizen, (2) on a matter of public concern, and (3) that the interest of the government employer in promoting efficient public service is not outweighed by her interest in that speech. *Id.*; *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968). "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 241, 134 S.Ct. 2369 (2014). That a public employer has engaged in unlawful sex discrimination is a matter of public concern. *See Buddenberg v. Weisdack*, 939 F.3d 732, 739–41 (6th Cir. 2019).

Demers alleges that she engaged in constitutionally protected speech when she spoke out about the sex discrimination that she and others suffered at the hands of Phelps-White. (Second Am. Compl., ¶¶ 42–45.) Defendants argue that her speech is not protected for two reasons.

First, Defendants argue that the Court must look to the "point" of Demers's statements to determine if her "communicative purpose" was to speak out against sex discrimination rather than to serve her own personal interests. (ECF No. 25, PAGEID # 227 (quoting *Farhat v. Jopke*, 370 F.3d 580, 592 (6th Cir. 2004).) To

9

make such a determination, the Court must look to the "content, form, and context of a given statement, as revealed by the whole record." *Farhat*, 370 F.3d at 589 (citing *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684 (1983)). As such, this issue requires further factual development and is ill-suited for resolution at this early stage.

      Second, Defendants argue that Demers's statements about sex discrimination are not constitutionally protected because they were made pursuant to her official duties as Chief Legal Counsel. (ECF No. 25, PAGEID # 227; ECF No. 27, PAGEID # 253.) Demers's speech would be unprotected if speaking out against sex discrimination was one of her official responsibilities, *Garcetti*, 547 U.S. at 421, but Defendants' argument ignores several of Demers's factual allegations. Demers acknowledges that ensuring internal compliance with anti-discrimination laws was once her responsibility as Chief Legal Counsel, but she alleges that she was stripped of that responsibility prior to making her complaints. She also alleges that some of her complaints were made outside of her chain of command, further demonstrating that she was not speaking pursuant to an official duty. If true, Demers's complaints about sex discrimination were made as a private citizen and are entitled to constitutional protection. *C.f. Buddenberg*, 939 F.3d at 739–41 (employee spoke as a private citizen when she brought complaints of misconduct and sex discrimination outside her chain of command and of her own volition).

10

Thus, taking Demers's factual allegations as true, she has alleged that she engaged in constitutionally protected speech for purposes of her First Amendment retaliation claim.

### C. Barreras and Patmon are entitled to qualified immunity, but Phelps-White is not.

Defendants next argue that Phelps-White, Barreras, and Patmon are entitled to qualified immunity because none violated clearly established law and, even if they did, Demers failed to plead their personal involvement in causing her constitutional injuries with particularity. (ECF No. 2, PAGEID # 219–24.)

A district court may consider qualified immunity on a Rule 12(b)(6) motion, *see Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001), but it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Qualified immunity is a "threshold question to be resolved at the earliest possible point" in litigation, but "that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433–34 (citing *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)); *see also Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings before discovery" (emphasis in original)). At the motion to dismiss stage, the relevant inquiry is whether the plaintiff has alleged "facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public

11

official, under an objective standard, would have known." *Adams v. Ohio Univ.*, 300 F.Supp.3d 983, 1002 (S.D. Ohio 2018) (quoting *Doe v. Ohio State Univ.*, 219 F.Supp.3d 645, 664 (S.D. Ohio 2016)).

To determine whether a defendant is entitled to qualified immunity, the Court asks two questions: "whether the facts that a plaintiff has alleged. . . make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It does not matter which query is addressed first; for immunity to attach, both must be satisfied. *Pearson*, 555 U.S. at 236–42; see also *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (internal citations omitted). When a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to the defense. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).

    **1.    Demers's Section 1983 claim is based on clearly established constitutional rights.**

Defendants' "clearly established" argument is easily disposed of. Demers alleges that Phelps-White, Barreras, and Patmon violated (1) her First Amendment right to engage in protected speech without government retaliation and (2) her Fourteenth Amendment right to equal protection on the basis of sex. Both rights are clearly established. *Buddenberg*, 939 F.3d at 741 ("We have long recognized that a public employer may not retaliate against an employee for her exercise of constitutionally protected speech"); *Poe v. Haydon*, 853 F.2d 418, 430 (6th Cir. 1988)

("There can be little doubt that. . . a female public employee ha[s] a constitutional right to be treated on the same basis as a male employee.").

### 2. Demers alleges that Phelps-White personally violated her constitutional rights, but she does not do so for Barreras and Patmon.

Next, to state an individual capacity Section 1983 claim, Demers must plead "with particularity" facts that demonstrate each Defendant's personal involvement in violating her constitutional rights. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898–99 (6th Cir. 2019); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The Court will address the factual allegations against Phelps-White before turning to those against Barreras and Patmon, which are based on a "failure to act" theory of liability.

### Executive Director Phelps-White

***First Amendment Retaliation.*** To state a First Amendment retaliation claim, Demers must allege that (1) she engaged in constitutionally protected speech, (2) that an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that speech, and (3) that causal connection exists between one and two—that is, the adverse action was motivated at least in part by her protected conduct. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)).

As discussed above, Demers sufficiently alleges that she engaged in constitutionally protected speech when she spoke out against sex discrimination by

13

Phelps-White. (Second Am. Compl., ¶¶ 42–45.) She further alleges that Phelps-White learned about her protected speech and terminated her in retaliation for speaking out. (*Id.* at ¶¶ 46–47.) Although her allegations do not demonstrate a temporal connection between Phelps-White learning of the protected speech and her termination, Demers alleges that the retaliatory motive for her termination is evident from the clearly pretextual reason she was given by Phelps-White (*i.e.*, that OCRC was going in a "different direction"). (*Id.* at ¶¶ 49–51.) These allegations are sufficient to state a First Amendment retaliation claims against Phelps-White.

***Equal Protection Gender Discrimination.*** To state a Fourteenth Amendment equal protection claim based on gender discrimination, "[a] plaintiff must demonstrate that a discrimination of some substance has occurred which has not occurred against other individuals who were similarly situated." *Hall v. Callahan*, 727 F.3d 450, 457 (6th Cir. 2013). In the public employment context, the factual allegations must indicate that the plaintiff suffered a discriminatory adverse action. *Foster v. Michigan*, 573 F. App'x 377, 394 (6th Cir. 2014). An adverse action is "a materially adverse change in the terms and conditions," including "termination of employment, a demotion. . . a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (citing *Hollins v. Atl. Co., Inc.,* 188 F.3d 652, 662 (6th Cir.1999)).

Demers alleges that Phelps-White expressed a bias against women and that she acted on that bias by substantially reducing Demers's responsibilities as Chief

14

Legal Counsel and reassigning those duties to a less-qualified male employee. (Second Am. Compl., ¶¶ 18–30, 36.) This is sufficient to state an equal protection claim against Phelps-White.

Accordingly, Phelps-White is not entitled to qualified immunity.

### Commissioners Barreras and Patmon

Demers's claim against Barreras and Patmon is based on their failure to act in response to Demers's complaints about Phelps-White.

To proceed on a "failure to act" theory against non-supervisory officials a plaintiff must identify "some cognizable duty" created by state law that obligated the officials to act. *See, e.g., Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 512 (6th Cir. 1996) (hereinafter "*Claiborne*"); *Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 621 (6th Cir. 2012). Absent a state-imposed duty, "'there is no conduit through which an exercise of state power can be said to have caused the constitutional injury.'" *Claiborne,* at 512 (quoting *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1416 (5th Cir. 1995)). "The absence of an identifiable duty would leave a malleable and elusive standard of conduct to which officials should conform their actions, rendering the causal connection between the omission and the [constitutional] deprivation far too abstract to impose Section 1983 liability." *Id.* An official's obligation to act may be provided by statute or judicially implied but, in either case, the "relevant question" is whether the obligation to act "is of such a nature that the individual's inaction will render him responsible for the constitutional harm." *Id.*

15

Demers alleges that Barreras and Patmon were obligated to investigate her complaints and to reprimand Phelps-White for discriminating against her. (Second Am. Compl., ¶¶ 52–53.) Ohio law charges the Commission with enforcing federal and state anti-discrimination laws. Its duties include "reciev[ing], investigat[ing], and pass[ing] written charges made under oath of unlawful discriminatory practices" and appointing an Executive Director to serve at its pleasure. Ohio Rev. Code Ann. § 4112.04(A)(2) and (6). Even assuming that these duties required investigation of verbal complaints or created a supervisory relationship with the Executive Director, any such obligation would be imposed on the entire Commission, not individual commissioners. Demers identifies no state law that requires—let alone authorizes—individual commissioners to act independent of the Commission. Instead, she alleges that Barreras served "functionally" as Phelps-White's direct supervisor and that Patmon "share[d]" those responsibilities (Second Am. Compl., ¶ 7–8), but these allegations do not change the fact that individual commissioners are unable to act, in a legal sense, except as constituents of a three-member quorum. *See* Ohio Rev. Code Ann. § 4112.03.

Because Demers has failed to identify a cognizable duty that would render Barreras and Patmon responsible for her alleged constitutional injuries, they are immune from suit in their individual capacities.

Accordingly, Defendants' Motion to Dismiss Demers's individual capacity Section 1983 claim on Count III is **DENIED** as to Phelps-White and is **GRANTED** as to Barreras and Patmon.

### D. Demers's official capacity Section 1983 claim is not duplicative of her Title VII claim.

Defendants' final argument is that Demers's official capacity Section 1983 claim against the Individual Defendants is duplicative of her Title VII claim against the Commission. (ECF No. 25, PAGEID # 218–19.)

This argument proceeds on a false premise, official capacity claims against OCRC officials are not duplicative of any and all factually similar claims against the Commission itself. To reach this premise, Defendants rely exclusively on cases that dismiss redundant § 1983 claims brought against counties and county officials in their official capacities. These cases stand for no more than the well-settled principle that an official capacity claim against an entity's agent is, in all respects other than name, a claim against the entity itself. *See, e.g., Faith Baptist Church v. Waterford Twp.,* 522 F. Appx 322, 327 (6th Cir. 2013); *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099 (1985)). That principle has no bearing on suits involving similar but distinct constitutional and statutory claims.

The Sixth Circuit has long held that plaintiffs can pursue employment discrimination (or retaliation) claims based on violations of constitutional rights in the same suit as analogous claims based on violations of Title VII. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984); *see also Bullington v. Bedford Cnty., Tennessee*, 905 F.3d 467, 472 (6th Cir. 2018) (collecting cases). It makes no difference whether the analogous constitutional and statutory claims are against the same defendant.

Accordingly, Defendants' Motion to Dismiss Demers's official capacity Section 1983 claim on Count III is **DENIED**.

IV. **CONCLUSION**

For the reasons above, Demers's Motion for Leave to File Sur-reply is **GRANTED** for the limited purpose of abandoning any Equal Protection claim based on age discrimination. Defendants' Motion to Dismiss is **GRANTED** as to Demers's individual capacity Section 1983 claim against Barreras and Patmon on Count III. Both Motions are **DENIED** in all other respects.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**